No. 88,051

IN THE MATTER OF THE MARRIAGE OF KRISTINE RAYMAN (CARPENTER), *Appellant*, and THOMAS RAYMAN, *Appellee*.

(47 P.3d 413)

Opinion filed May 31, 2002.

*Ann K. Colgan*, of Colgan Law Firm, L.L.C., of Kansas City, argued the cause and was on the brief for appellant.

*Judith C. Hedrick*, of Barnett & Jamison Law Firm, of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Kristine Rayman Carpenter appeals the trial court's order continuing residential custody in her ex-husband, Thomas Rayman, during his military tour in Korea, where dependants are not allowed to accompany him. She argues the trial court (1) misapplied K.S.A. 2001 Supp. 60-1610(a)(2) and the parental preference doctrine, (2) abused its discretion in failing to find a material change of circumstances occurred and the best interest of the children would be served by changing residential custody to her during Thomas' 1-year Korean military tour of duty.

In July 1997, Kristine and Thomas were divorced. At the time, they had two boys, ages 11 months and 3 years. Both Thomas and Kristine were on active duty in the United States Army when they

divorced, and, by agreement, they shared joint custody of the children, with Thomas having primary residential custody. Kristine was given "reasonable visitation privileges at times mutually agreed upon."

On June 25, 2001, Kristine filed a motion which she captioned Motion for Specific Visitation and for Future Change of Custody. She requested her visitation rights be made more specific and she be given temporary custody of the children for the year in which Thomas would be in Korea, beginning October 2001. She contended it was in the children's best interests for them to be placed with her.

The motion was heard on August 24 and 27, 2001. Thomas clarified that he would be leaving for Korea on October 15, 2001, and returning October 15, 2002, with 30 days of leave back in the United States with his family, which he planned to take during the middle of his tour. He testified the children would live in Michigan with his present wife, Leisha, and the paternal grandparents during the time he would be gone. This plan for the children, however, was changed after the court issued its ruling, and the children were moved to Texas, where Leisha's parents reside. The change in plans was due to the health problems of Leisha's father. Texas is also where Thomas will be stationed at Fort Hood after he returns from Korea.

No evidence was introduced tending to show either parent was unfit, nor were any allegations of such nature made. Thomas stated that he believed the boys should remain in his custody but with Leisha during his absence because putting them under a new parenting technique or new parenting attitude would add to the already existing trauma of the coming move and change in school systems. He testified that Kristine did not properly discipline the boys and after they returned from a 2-month visit to Kristine they were generally less obedient.

Leisha testified that it would be traumatic to the boys for them not to have contact with her for the year in which Thomas would be gone as she had been caring for them for the last several years. She and Thomas both testified that it was their belief that it was in the children's best interest to remain in his residential custody.

Her testimony established that she has a strong relationship with the children and has been a stay-at-home mother who is expecting a child in 2002.

Kristine testified that she was going to be medically retired from the Army in September 2001, due to migraines, problems with her hips, and an undisclosed condition. She stated the medical conditions would not affect her parenting abilities. While on medical retirement, she planned to attend school in Tennessee. Michael Carpenter, Kristine's current husband, testified that due to schooling and training he would not join Kristine in Tennessee until May or June 2002. Kristine admitted that she knew at the time she agreed to Thomas being the primary physical custodian that he might at some future date face a hardship tour.

The trial court adopted the agreements of the parties as to an extended visitation schedule and then stated:

"As to the next year, the motion to modify the custody on a temporary basis, that request is denied for the following reasons. I find that the more stable environment is with the respondent, that the children have been with him since they were a very young age and that the transfer to their mother, even for only a year period, is likely to be unsettling to them. It doesn't appear to be in the best interests.

"I'll also note that the mother has significant medical problems which are leading to her medical retirement from the military, that there are going to be major changes in her life, including that her present husband will be gone away to school for the vast majority of the time that's under question here, that the children are more likely to be successful in the custody of their father and his present wife with the help of the paternal grandparents.

"It is in the nature, I suppose, of military children that they're going to be moved around a lot. It doesn't make any difference where they spend the next year. A year from now they're moving to Texas. For those reasons that motion is denied.

"During this year, however, I want the petitioner to have visitation at Thanksgiving time, at Christmas time, spring break, and for eight weeks during the summer. As we have set out in other orders, the parties are to share the expenses concerned with the transportation for visitation. If they can not agree on how to do that bring an appropriate motion back before me and I'll make an order."

After discovering the children would be moving to Texas rather than Michigan, Kristine asked the court to reconsider its ruling and

the trial court declined to do so. From these orders, Kristine appeals.

Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer from the Court of Appeals on our own motion).

Kristine contends we must interpret K.S.A. 2001 Supp. 60-1610(a)(2) in connection with the parental preference doctrine, which she argues is a conclusion of law over which our review is unlimited, citing *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). She agrees that whether a child custody order is to be changed or modified rests with the sound judicial discretion of the trial court. See *Richardson v. Richardson*, 211 Kan. 172, 505 P.2d 690 (1973).

Thomas states the interpretation of K.S.A. 2001 Supp. 60-1610(a)(2) as to the application of the parental preference doctrine is an issue of both fact and law, with our review being abuse of discretion as to issues of fact, see *Dickison v. Dickison*, 19 Kan. App. 2d 633, 874 P.2d 695 (1994), and unlimited as to questions of law. See *In re R.C.*, 21 Kan. App. 2d 702, 706, 907 P.2d 901 (1995), *rev. denied* 259 Kan. 928 (1996).

We said in *In re Marriage of Whipp*, 265 Kan. 500, 506, 962 P.2d 1058 (1998), that

"[w]hen the custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child. The trial court *is in the best position to make the inquiry and determination*, and in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal. [Citations admitted.]"

We have further said that judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

The caption of Kristine's motion was for Specific Visitation and for Future Change of Custody. The motion first stated the separation and joint custody agreement had been for "reasonable visitation" and she requested specific visitation. The motion then asked for temporary custody of the children at a date certain in the future. The motion requested residential custody of the children to be changed as of the time Thomas was posted to Korea on October 15, 2001. This request was denied by the court. Kristine's

first appellate contention is that K.S.A. 2001 Supp. 60-1610(a)(2) was unconstitutionally applied in that it controls the change of custody between natural parents while in fact the trial court's decision placed residential custody in Thomas' wife, a stepparent or nonparent, which Kristine claims to be a violation of the parental preference doctrine.

Although the evidence presented to the trial court did show the stepmother would be caring for the children during the two 5½-month periods Thomas was in Korea, the trial court's ruling was that residential custody was to remain with Thomas, and Kristine was granted increased visitation rights.

The argument in Kristine's brief of an unconstitutional application of 60-1610(a)(2) was not made to the trial court, and we have clearly held that "[w]here constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. [Citations omitted.]" *Ruddick v. Boeing Co.*, 263 Kan. 494, 498, 949 P.2d 1132 (1997).

The issue before the trial court did, however, involve the application of K.S.A. 2001 Supp. 60-1610(a)(2), which in applicable part provides:

"Subject to the provisions of the uniform custody jurisdiction and enforcement act (K.S.A. 38-1336 through 38-1377, and amendments thereto), the court may change or modify any prior order of custody, residency, visitation and parenting time, when a material change of circumstances is shown . . . ."

The contest for residential custody was between Kristine and Thomas. The residential custody was continued in Thomas, the biological father, who had faithfully cared for his two children for the 4 years since the parties' divorce. It is true that he has enjoyed the assistance of his present wife in caring for the children, but the residential custody was and remains with Thomas.

This is not a contest as to custody between a natural parent and a grandparent or nonparent who have no permanent right to the children's custody as was the case in *In re Guardianship of Williams*, 254 Kan. 814, Syl. ¶¶ 1, 2, 3, 869 P.2d 661 (1994), which Kristine relies on in characterizing the trial court's order as granting custody to Thomas' present wife. Such is not the court's order. The

*Williams* decision, the case cited therein, and the parental preference doctrine are not applicable to the facts of our case.

What Kristine in fact appears to request on appeal (although this is not how she couched her request to the trial court) is for a bright line rule that a parent with residential custody of his or her children loses that custody when required to be away from his or her children for an extended period of time such as a 5½-month military tour to Korea, followed by a month's time with his or her family, and then followed by an additional 5½-month military tour back to Korea. We decline to adopt such a bright line rule requiring change of residential custody to the noncustodial parent.

Each situation involving military families has distinct differences, as do the facts of temporary changes which relate to nonmilitary custodial relationships. The temporary transfer of the parent with residential custody must not automatically trigger a custody change. We reject Kristine's argument that the parental preference doctrine was violated by the trial court's ruling under the facts of this case. Custody is an issue to be determined on a case-by-case basis as the trial court did here.

Kristine's second contention that the trial court abused its discretion in failing to find there was a material change of circumstances that warranted a change in the best interests of the children flies in the face of contrary factual findings made by the trial court in resolving the disputed evidence. The trial court heard the evidence and saw each witness who testified. Issues of credibility are the providence of the trial courts.

As we have previously said, we utilize an abuse of discretion standard when reviewing a trial court's child custody determination. *In re L.A.M.*, 268 Kan. 441, 445, 996 P.2d 834 (2000); *In re Marriage of Whipp*, 265 Kan. at 502.

There was substantial competent evidence to support the trial court's findings and rulings. The trial court did not abuse its discretion in denying Kristine's motion, and its ruling is affirmed.

DAVIS, J., not participating.

DAVID S. KNUDSON, J., assigned.